AE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELIZABETH S. ELLIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04 C 6262 |
| ) | |
| HOME DEPOT, U.S.A., INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Elizabeth Ellis has sued her former employer, Home Depot U.S.A, Inc., for discrimination based on race and gender under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), and 42 U.S.C. § 1981. Home Depot has moved for summary judgment. For the following reasons, the Court grants the motion.

### Facts

**1. The Ellis - Dennis altercation**

On February 10, 2004, Ellis, an African-American female, was working as a cashier at the Home Depot in Calumet City, Illinois, when her boyfriend, Ravon Dennis, entered the store and asked to speak with her. She told him she was busy, but Dennis insisted, so she requested and obtained permission from the head cashier, Lorena Galvan, to take a break. She accompanied Dennis outside the store, and an argument ensued.

Around the same time, William DiCristofano, the store's receiving department supervisor, was leaving work and saw Ellis walking towards the store and away from Dennis's

1

red Chevrolet Blazer. As DiCristofano and Ellis crossed paths, DiCristofano claims, Ellis muttered an expletive and said "I'm going to get my phone." He says that Ellis then walked back to Dennis's Blazer, tried to grab his cell phone, and struck Dennis several times. Ellis headed back to the store, but as she neared the entrance, Dennis pulled up in the Blazer, got out of the vehicle, and continued the argument. DiCristofano claims that he saw Ellis slap Dennis twice before he got back into the Blazer and sped off.

While this was happening, DiCristofano called the assistant store manager, James Siegfried, and told him that there was a cashier outside engaged in an altercation. By the time Siegfried made his way outside, Ellis was sitting on a bench near the front of the store, shaking and talking on a cell phone. Ellis was upset when she got off the phone, so Siegfried gave her the rest of the day off. He then walked back into the store, and a customer who said he witnessed the incident approached him. The customer said that he was a Home Depot stockholder and that he was upset to see an employee wearing her work apron hitting and screaming at someone in front of the store.

Later that day, Eleanor Gonzalez, the store's human resources manager, arrived at work and spoke with Siegfried about the incident. Siegfried told her that DiCristofano and a customer witnessed Ellis strike her boyfriend outside the store. Siegfried and Gonzalez then contacted Karl Karsten, the store manager, to inform him about the altercation. Karsten said that management would have to complete an investigation and that Ellis should be suspended from work in the meantime.

The next day, February 11, Karsten and Gonzalez took written statements about the incident from DiCristofano and Siegfried. They also spoke with Ellis to obtain her version of the

events. She said that Dennis arrived at the store and kept "hollering and yelling" and that she had no control over him. She denied raising her voice, using profanity, or hitting Dennis in any way. She also said that Mary Gerenda, another cashier at the store, saw what happened and that Karsten and Gonzalez should speak with her as well. Karsten concluded the meeting by advising Ellis that he would continue the investigation and get back to her the next day.

Because Ellis denied hitting Dennis, Karsten decided to contact DiCristofano to question him again about what he had seen. He did so that same day, and DiCristofano's story remained consistent with his previous account. Gonzalez then interviewed Gerenda, who admitted that she saw parts of the incident, but did not see everything because she was also working at the returns desk, where her view was blocked. Gerenda did say that from what she saw, Ellis never hit Dennis.

After completing the investigation, Karsten and Gonzalez decided that DiCristofano's version of what happened was credible. They believed that by participating in a physical altercation on work property, Ellis committed an act classified in Home Depot's employee manual as a major work offense. As a result, Home Depot fired her on February 12.

**2.     The Eberle – Ramirez altercation**

In support of her claim that her termination was discriminatory, Ellis contends that a white male Home Depot employee, Robert Eberle, committed a major work offense but was not fired. In the fall of 2003, Eberle and DiCristofano were working together outside the store near the lumber area, when a customer, Adolfo Ramirez, pulled his van within ten feet of them, slammed on his breaks, jumped out of the car, and chased Eberle into the store. Startled, DiCristofano ran after Ramirez and yelled to a cashier, Yvonne Cavazos, to call for help. By the

3

time DiCristofano caught up to Ramirez, he had jumped on Eberle's back, hit him in the face, and put him in a choke hold from behind. Several Home Depot associates separated the men and restrained Ramirez until the police arrived to arrest him. Ramirez was apparently angry with Eberle because Ramirez had done some work in Eberle's uncle's yard and Eberle had told his uncle not to pay Ramirez because the work was done poorly.

As Ramirez, a native Spanish speaker, was leaving the store, he pleaded with Cavazos to translate for him, so that he could tell Siegfried, who was now outside waiting for the police, "what Eberle was doing on company time." Cavazos Dep. at 25. Cavazos told Siegfried what Ramirez had said, and Siegfried replied, "He can make the statement when the police arrive." A week later, Ramirez called Cavazos and told her that Eberle owned a general contracting business and was using the Home Depot job to benefit his clients. Cavazos already knew that Eberle owned a general contracting business and had suspected, based on her own observations at work, that Eberle was using Home Depot to benefit his business. She never told anyone about her beliefs or her conversation with Ramirez, however, because she assumed that management already knew what Eberle was doing. Home Depot considers it a major work offense to solicit customers on work time or to engage in transactions that conflict with Home Depot's interests.

## Discussion

On a motion for summary judgment, the Court must consider the evidence and draw all reasonable inferences in favor of Ellis, the non-moving party in this case. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must look at the evidence "as a jury might, construing the record in the light most favorable to the nonmovant and avoiding the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337

4

F.3d 767, 770 (7th Cir. 2003).

Ellis claims that Home Depot fired her because of her race and gender in violation of Title VII and 42 U.S.C. § 1981 and proceeds under the indirect *McDonnell Douglas v. Green* burden-shifting method. 411 U.S. 792, 802 n. 13 (1973). To survive Home Depot's motion for summary judgment, Ellis must establish a *prima facie* case by putting forth evidence from which a jury reasonably could find that she is a member of a protected class, she was satisfying Home Depot's legitimate job expectations, she was discharged, and other similarly situated non-class members were treated more favorably. *Id.* If Ellis establishes a *prima facie* case, then the burden shifts to Home Depot to put forth a legitimate, non-discriminatory reason for the termination. *Clay v. Holy Cross Hosp.*, 253 F.3d 1000, 1005 (7th Cir. 2001). If Home Depot satisfies its burden, then the inference of discrimination disappears, and Ellis must put forth evidence from which a jury reasonably could find that Home Depot's reason was a pretext for discrimination. *Id.* at 1005-06.

For purposes of discussion, we assume that Ellis is able to establish a *prima facie* case and proceed directly to the issue of pretext. *See, e.g., Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 732 (7th Cir. 2001). To meet her pretext burden, Ellis must do more than offer evidence that Home Depot's proffered reason was wrong or demonstrated poor business judgment. *Green v. Natl. Steel Corp., Midwest Div.*, 197 F.3d 894, 899 (7th Cir. 1999). She must offer evidence from which a jury reasonably could find that Home Depot's reason was not the real reason for its actions.

Home Depot claims that it fired Ellis because two witnesses said that she hit someone outside the store while in her work uniform. In response, Ellis claims that a similarly situated

5

white male Home Depot employee, Robert Eberle, committed a major work offense in the fall of 2003 and was not fired. Evidence of differential treatment of similarly situated persons outside the same protected class is an accepted means of showing pretext. See, e.g., *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1042 (7th Cir. 1993). Therefore, the Court must determine whether a jury reasonably could find that Eberle and Ellis "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or their employer's treatment of them." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000). To be "similarly situated," Ellis must show that she and Eberle held the same or similar employment positions, had similar employment histories, and engaged in similar misconduct giving rise to the employment action. *Weiss v. Coca-Cola Bottling Co.*, 990 F.2d 333, 338 (7th Cir. 1993).

Ellis argues that she and Eberle are similarly situated in that they both committed a major work offense, but only Ellis was fired. Ellis claims that Eberle violated Home Depot's rule prohibiting an associate from "solicit[ing] work from any customer" or "participating in or inappropriately influencing a transaction between Home Depot and another individual or organization, when self-interest is involved." Putting aside the fact that the record hardly supports an inference that Eberle committed this offense, Eberle's conduct is only relevant, for purposes of this motion, if Eberle's supervisors were aware that it occurred. *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001) (holding that certain employees were not similarly situated because supervisors were not aware of alleged conduct); *Morrow v. Wal-Mart Stores*, 152 F.3d 559, 562-564 (7th Cir. 1998) (holding that female employees alleged to have engaged in sexual harassment were not similarly situated where no comparable complaints were lodged against them).

Ellis has offered no evidence that Home Depot knew that Eberle committed the claimed major work offense. Cavazos admitted in her deposition that she did not tell management that Eberle was doing business on company time, and Ramirez's plea to Siegfried, as he was being arrested, that he wanted to speak to a manager about "Eberle's activities while on company time" was too vague (not to mention too lacking in credibility) to put a manager on notice that Eberle had committed a major work offense. An employer's decision cannot be labeled racist or sexist when he keeps one employee and fires another only because he erroneously believes that the first employee has done nothing wrong.

Ellis also argues that she and Eberle are similarly situated because they were both engaged in an altercation that involved physical contact with another individual. Pl. Brief at 11. This argument is unconvincing for the obvious reason that Ellis was not fired because she came into physical contact with another person. She was fired because management concluded that she battered someone on Home Depot property, an act that Home Depot regards as a major work offense. Ellis has offered no evidence suggesting that Eberle battered someone. In fact, the undisputed evidence shows that he was attacked by a customer.

Ellis also attempts to demonstrate pretext by suggesting that Home Depot did not fully investigate Ramirez's allegations that Eberle was doing something wrong on company time, and only investigated Ellis' incident to the extent that it uncovered information adverse to Ellis. Evidence that Home Depot's investigation of Ellis was tinged by anti-female or anti-black bias could be enough to demonstrate pretext. *See Biolchini v. General Electric Co.*, 167 F.3d 1151, 1154 (7th Cir. 1999); *Kariotis v. Navistar International Corp.*, 131 F.3d 672, 676 (7th Cir. 1997). In this case, however, Ellis has offered no evidence suggesting that Home Depot

conducted the two investigations in anything but a materially identical fashion. In both investigations, Home Depot interviewed all the employees who witnessed the incident, took a statement from the employee involved, and made a decision accordingly. It is true that Home Depot did not ask Dennis if Ellis slapped him and did not call Ramirez to ask him what Eberle doing on company time, but no jury reasonably could find that these investigative inadequacies suggest race or gender bias. As a result, they are not evidence of pretext.

## Conclusion

For the foregoing reasons, Home Depot's motion for summary judgment is granted [docket no. 25]. The Clerk is directed to enter judgment in favor of the defendant. The trial date of January 9, 2006 is vacated.

/s/ Matthew F. Kennelly
MATTHEW F. KENNELLY
United States District Judge

Date: October 27, 2005